Filed 3/2/16  In re Esteban M. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Esteban M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ESTEBAN M., <br><br> Defendant and Appellant. | A145285 <br><br> (Alameda County Super. Ct. No. SJ1502457901) |

Defendant Esteban M., then age 16, was the subject of a wardship petition filed by the district attorney in March 2015 pursuant to Welfare and Institutions Code section 602, subdivision (a).[1]  Pursuant to a plea agreement, Esteban admitted an allegation of attempted robbery.  He was adjudicated a ward of the juvenile court, which imposed conditions of probation.

On appeal, Esteban raises two sets of issues:  he claims that the juvenile court erred in failing to make findings and orders regarding his educational needs, and he objects to certain of the probation conditions as vague or overbroad.  He objects to conditions requiring him to "be of good conduct" and "attend school on a regular basis," a search condition that includes his "electronics and passwords," and a drug condition

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

1

that prohibits him from associating with users or dealers of "illegal or intoxicating substances" and from possessing such substances or associated paraphernalia.

We conclude that Esteban has forfeited his claim of error as to educational findings and orders by failing to raise the issue in the juvenile court. We will modify the dispositional order of the juvenile court by striking the phrase "including electronics and passwords" from the search condition, and we will remand the matter for the juvenile court to consider a tailored electronics search condition. We will also modify the drug condition, as we discuss below. In all other respects, we will affirm the dispositional order of the juvenile court.

## FACTUAL AND PROCEDURAL BACKGROUND

We draw our brief statement of the facts from reports prepared by the probation and police departments. In late February 2015, a 14-year-old male (the victim) reported to the police that he had been robbed of his skateboard twice by the same person, a 16 year old he knew only as "Esteban."

The first incident took place the previous month at a skateboard park that Esteban frequented. The victim said Esteban told him to give up his skateboard, or Esteban would punch him; he gave up the skateboard. About a month later—the day before he went to the police—the victim saw Esteban on BART with the stolen skateboard, went home and told his father that Esteban would probably be at the skateboard park, and then went to the park with his father. They did not see Esteban, but they found and retrieved the skateboard.

The next day, the victim was riding the skateboard when he saw Esteban following him. Although he tried to avoid Esteban, Esteban followed him, caught up with him, grabbed him, and pushed him. The victim pushed back. Esteban then removed an object from his waistband area and held it up in the air, at which point the victim feared for his

safety and backed away from Esteban, who took the skateboard and fled.[2]  Later that day, the victim reported both incidents to the police and provided a description of Esteban.

In the subsequent police investigation, an officer obtained a photograph online, "on 'estabomb91' Instagram," showing someone who matched the victim's description of Esteban holding the stolen skateboard.  The officer used the photo to create a flyer, which he sent to various local law enforcement agencies.  A police officer assigned to Esteban's school recognized Esteban in the photograph, and sent the investigating officer photographs of Esteban and other students from the school.  The victim identified Esteban in a photo lineup, and on March 26, 2015, Esteban was detained and informed of his *Miranda* rights, and admitted to the two incidents.

The district attorney filed a wardship petition pursuant to Welfare and Institutions code section 602, subdivision (a), alleging two counts of robbery in violation of Penal Code section 211.  The petition alleged that Esteban used a deadly and dangerous weapon, specifically a metal pipe, in connection with the first count.  (Pen. Code, § 12022, subd. (b)(1).)

At the detention hearing on March 30, 2015, the district attorney's petition was amended to allege attempted robbery as the first count.  Pursuant to a plea agreement, Esteban admitted the allegation of attempted robbery, in exchange for the dismissal of the second count and the weapons enhancement.  The court ordered that Esteban remain detained and scheduled a disposition hearing for April 14, 2015.

At the disposition hearing, the juvenile court observed:  "Obviously, this is very concerning, the way he has preyed on this victim over two years younger than him; Robbing him, threatening to hit him with a type of deadly, dangerous weapon.  [¶] I guess I'm also concerned that he reported he received Cs and Bs for his last grading period.  But I looked at the transcript.  It shows he has compiled a GPA of 1.74, which is a C minus.  In the fall he received two Fs, one D minus, two C minuses, and one C.  I'm not

---

[2] The victim identified the object as a short metal pipe.  Esteban told the juvenile court that the object was "a camera holder used to record when I skate."

sure why the family or the Minor thinks that he's receiving Cs and Bs.  He certainly didn't receive them in the last full grading period.  [¶] However, this is petition 1.  He's 16.9.  So standard probation . . . is appropriate."

Esteban's counsel further addressed Esteban's status at school:  "I've indicated to the Court and the Probation Department that Esteban does not have the best grades.  He is aware of that.  He also has an I[ndividualized] E[ducational] P[rogram].[3]  Despite the fact that he doesn't have great grades, his teachers apparently think that he is a pleasure to have in class, and they speak very highly of him."  Esteban's counsel noted that she had attached letters from three of his teachers to her letter to the probation department, saying, "You know, it's not often I get teachers to write such outstanding letters."[4]  She also represented that Esteban "[wa]s going to be working on his grades."  The juvenile court acknowledged that the letters were "impressive."

Esteban was adjudicated a ward of the juvenile court, which ordered him to continue to reside with his parents, with his care, custody and control under the supervision of the probation department.  The court stated that Esteban was subject to "the standard probation terms and conditions with the following additional conditions:

---

[3] The probation department report stated that Esteban was in the eleventh grade with an active IEP.

[4] The record includes a letter from Esteban's counsel to the probation department, asking the department to recommend standard probation.  In that letter, Esteban's counsel reported that Esteban "ha[d] an excellent reputation at school," and that "[h]is teachers thin[k] very highly of him . . . . Although, Esteban does not have the best grades, he is apparently 'a pleasure to have in class.'  He also has an IEP that addresses his special education needs."

Attached to the letter were three letters from Esteban's teachers, including one from his special education case carrier, who wrote that he had "years of exposure to [Esteban] and have literally researched his life history and carefully digested his IEP."  He continued, "I have had the pleasure to work with Esteban on History research, English writing assignments, Algebra and other life skills math, and science work and I can testify to Esteban's potential to work hard on school assignments and respect school rules."  He asked the juvenile court to "let [Esteban] return to learning at [his regular high school] as soon as possible."

4

"You shall abide by—after you get off GPS, abide by your curfew set by your parents, no later than 7:00 p.m., unless you're with a parent, legal guardian, or have prior permission of the Probation Officer;

"You're not to have any contact with the named victim. Stay 100 yards away from him. No contact directly or indirectly including by telephonic means, electronic means or by third parties. . . .

"Do not stay away from your residence overnight nor leave Alameda County without prior permission of your Probation Officer or parents;

"Report to the Probation Officer as directed;

"Obey all laws of the community and be of good conduct;

"Obey your parents, legal guardian, or caregiver;

"Keep the Probation Officer informed of any changes in your address, phone number, family, school, or employment status;

"Attend school on a regular basis. Obey all school rules and regulations. Do not leave the school campus during school hours without permission of school officials or the probation officer;

"You and your parents are to cooperate with your Probation Officer in any program of guidance, counseling, and therapy, specifically drug counseling and anger management;

"I was also concerned you were suspended from school for fighting during this school year. We have to take care of that issue, sir;

"With regards to drugs, you're not to associate with anyone you know or reasonably should know is using, dealing, or possessing any illegal or intoxicating substances. You yourself must not be under the influence or in possession of any such substances or possess any associated paraphernalia.

"I think it is significant that you were using marijuana even though you claim you were just experimenting about two weeks prior to being detained, so I think the drug issue is something you definitely have to get under control;

"You must submit to a test of your blood, breath, or urine to detect the presence of such substances in your system and a search of your person, any containers you may have or own, your vehicle, or residence day or night at the request of a Probation Officer or peace officer, and that includes electronics and passwords. I find that for minors who have been using marijuana or drugs, it is important to be able to supervise the concerns the Court has using electronics, because minors will purchase or sell drugs on the Internet, display themselves using drugs, and in possession of paraphernalia. It's the only logical way of being able—to be able to supervise this important term of probation;

"The parents and Minor must cooperate with the Probation Officer in any other program of guidance and counseling; . . . .

"Release him to his parents on GPS today;

"Put it over for 60 days for progress report, discipline report, attendance, and determination of restitution."

After some further discussion among counsel, the juvenile court and the minor, in which the juvenile court noted in connection with further scheduling, "We want to get final grades," a hearing was set "for determination of restitution and progress report. The juvenile court addressed Esteban: "So that's very important. You need to get your grades, get them right over to the Probation Officer for inclusion in the progress report as soon as you receive them. Okay, sir? Thank you."

This appeal timely followed.

## DISCUSSION

A.    *Findings and Orders about Esteban's Educational Needs*

Esteban argues that the juvenile court "did not fully consider and determine [his] current and future educational needs as required by [California Rules of Court,] rule 5.651, subdivision (b)(2)," and asks us to remand the matter and order the juvenile court to "fully comply with the directives" of the rule.

6

Rule 5.651 of the California Rules of Court[5] requires the juvenile court to consider information about a minor's educational needs and to address certain educational issues in its findings and orders at dispositional hearings for minors who are the subjects of petitions under section 602. (Rule 5.651(a)(1) and (b)(2).[6])

The Attorney General argues that Esteban has forfeited this issue because he did not raise it in the juvenile court, and that even if he had not forfeited it, there is no need

[5] All further unspecified rule references are to the California Rules of Court.

[6] Rule 5.651(b)(2) provides that at a disposition hearing, "the court must: [¶] (A) Consider and determine whether the child's or youth's educational, physical, mental health, and developmental needs, including any need for special education and related services, are being met; [¶] Identify the educational rights holder on form JV-535; and [¶] (C) Direct the rights holder to take all appropriate steps to ensure that the child's or youth's educational and developmental needs are met. [¶] The court's findings and orders must address the following: [¶] (D) Whether the child's or youth's educational, physical, mental health, and developmental-services needs are being met; [¶] (E) What services, assessments, or evaluations, including those for developmental services or for special education and related services, the child or youth may need; [¶] (F) Who must take the necessary steps for the child or youth to receive any necessary assessments, evaluations, or services; [¶] (G) If the child's or youth's educational placement changed during the period under review, whether: [¶] (i) The child's or youth's educational records, including any evaluations of a child or youth with a disability, were transferred to the new educational placement within two business days of the request for the child's or youth's enrollment in the new educational placement; and [¶] (ii) The child or youth is enrolled in and attending school. [¶] (H) Whether the parent's or guardian's educational or developmental-services decisionmaking rights should be limited or, if previously limited, whether those rights should be restored. [¶] (i) If the court finds that the parent's or guardian's educational or developmental-services decisionmaking rights should not be limited or should be restored, the court must explain to the parent or guardian his or her rights and responsibilities in regard to the child's education and developmental services as provided in rule 5.650(e), (f), and (j); or [¶] (ii) If the court finds that the parent's or guardian's educational or developmental-services decisionmaking rights should be or remain limited, the court must designate the holder of those rights. The court must explain to the parent or guardian why the court is limiting his or her educational or developmental-services decisionmaking rights and must explain the rights and responsibilities of the educational rights holder as provided in rule 5.650(e), (f), and (j); and [¶] (I) Whether, in the case of a nonminor or nonminor dependant youth who has chosen not to make educational or developmental-services decisions for himself or herself or has been deemed incompetent, it is in the best interests of the youth to appoint or to continue the appointment of an educational rights holder."

for remand because "[t]he juvenile court comported with the intent of rule 5.651 when it considered [Esteban's] attendance record and grades at [his school], read the 'impressive letters' from two of his teachers, and ordered updated information about appellant's educational status for the subsequent progress hearing." As we discuss below, we agree with the Attorney General.

We consider first whether Esteban's claim of error as to rule 5.651(b)(2) has been forfeited. "As a general rule, only 'claims properly raised and preserved by the parties are reviewable on appeal.'" (*People v. Smith* (2001) 24 Cal.4th 849, 852 (*Smith*), quoting *People v. Scott* (1994) 9 Cal.4th 331, 354.)

The parties agree that no objection regarding rule 5.651(b)(2) was raised at any juvenile court hearing. Esteban argues that the claim has not been forfeited, citing *Smith* and *In re Sheena K.* (2007) 40 Cal.4th 875 (*Sheena K.*) for the proposition that an unauthorized sentence is an exception to the forfeiture rule, and contending that a juvenile court's failure to comply with its duties under rule 5.651(b)(2) is equivalent to an unauthorized sentence, and is therefore an exception to the waiver rule. However, Esteban disregards important statements in the cases he cites, which state that the unauthorized sentence exception applies in cases where "obvious legal errors at sentencing . . . are correctable without referring to factual findings in the record or remanding for further findings." (*Smith, supra*, 24 Cal.4th at p. 852; see also *Sheena K., supra,* 40 Cal.4th at p. 882, fn. 3 [acknowledging "a 'narrow class' of cases [where] the trial court's omission or erroneous imposition of a particular sentence or term required by law results in an 'unauthorized' sentence, which is subject to correction by the reviewing court despite the absence of an objection by either party in the trial court"], citing *Smith, supra*, at pp. 852-853.) Here, Esteban requests that the case be remanded to the juvenile court for further findings, and therefore the unauthorized sentence exception does not apply.

Esteban also claims to avoid forfeiture by likening the juvenile court's duty to comply with rule 5.651(b)(2) to the juvenile court's duty under section 702 to "declare" whether a wobbler offense is a felony or misdemeanor. The explicit declaration

8

requirement set forth in section 702 is implemented by California Rules of Court that require certain findings to be "noted in the minutes of the court" (rule 5.778(f); see also rule 5.795), and certain declarations to be stated "on the record." (Rules 5.778(f)(9) and 5.795(a).) Our Supreme Court has held that when a juvenile court does not comply with the explicit declaration requirements of section 702, remand is appropriate. (*In re Ricky H.* (1981) 30 Cal.3d 176, 191-192 (*Ricky H.*), superseded by statute on other grounds as stated in *In re Michael D.* (1987) 188 Cal.App.3d 1392, 1396.) Thus, in *Ricky H.*, the Supreme Court remanded the case for the trial court to make the necessary declaration, even though neither party ever raised the issue. (*Ricky H., supra,* at pp. 191-192.)

We decline to extend any exception to the forfeiture rule to claims of failure to comply with rule 5.651(b)(2). An exception to the forfeiture rule for failure to comply with the explicit declaration requirement of section 702 can be justified by the significance of the contents of that declaration. Whether an offense is a felony or a misdemeanor determines the maximum period of physical confinement, and "any prior felony conviction, whether adult or juvenile, 'shall . . . be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding.' " (*In re Kenneth H.* (1983) 33 Cal.3d 616, 619, fn. 3, quoting Cal. Const., art. I, § 28, subd. (f).) Juvenile adjudications may be used as strikes. (*In re Ramon M.* (2009) 178 Cal.App.4th 665, 675-676 [time bar does not apply to claim that juvenile court erred in failing to make required declaration under section 702], citing *People v. Nguyen* (2009) 46 Cal.4th 1007.) Courts are "particularly" unwilling to ignore error "where the defendant might otherwise spend too much or too little time in custody." (*People v. Welch* (1993) 5 Cal.4th 228, 236.) These considerations do not apply to the findings and orders regarding the educational and developmental services decision-making rights that are described in rule 5.651(b)(2), and we therefore decline Esteban's invitation to liken the requirements of rule 5.651(b)(2) to the requirements of section 702.

Even if Esteban had preserved his claim, we would affirm. "A ' " 'judgment or order of the lower court is *presumed correct*[, and a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be

affirmatively shown.' " [Citation.]' " (*In re Julian R.* (2009) 47 Cal.4th 487, 498-499 (*Julian R.*).) A reviewing court " 'appl[ies] the general rule "that a trial court is presumed to have been aware of and followed the applicable law. [Citations.]" ' (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114.) 'This rule derives in part from the presumption of Evidence Code section 664 "that official duty has been regularly performed," ' and thus when 'a statement of reasons is not required and the record is silent, a reviewing court will presume that the trial court had a proper basis for a particular finding or order.' (*Ibid.*)" (*Julian R.*, *supra*, at p. 499.)

Esteban's argument for remand for additional findings and orders rests on a single case, *In re Angela M.* (2003) 111 Cal.App.4th 1392 (*Angela M.*). That case is distinguishable and inapplicable. In *Angela M.*, a court-appointed psychologist "opined Angela's 'principal problem' was 'extensive drug use,' which may have been an 'attempt on her part to self-medicate' chronic symptoms of bipolar disorder or attention deficit hyperactivity disorder." (*Id.* at p. 1395.) The psychologist "also reported 'she must undergo an IEP . . .' assessment." (*Ibid.*) The juvenile court committed Angela to the California Youth Authority (CYA) in view of "her lengthy drug history, heavy gang involvement, criminal record, behavioral problems, numerous probation violations and repeated unauthorized absences from placements." (*Id.* at p. 1397.) Although the juvenile court "was clearly on notice that Angela may have special educational needs," (*id.* at p. 1398), the juvenile court "did not mention this issue when committing her" to the CYA. (*Id.* at p. 1399.) The Court of Appeal affirmed the commitment to the CYA, but remanded the matter, directing the juvenile court "to determine whether an evaluation of Angela's special educational needs should be conducted, with the court's findings to be forwarded to the Director of the California Youth Authority . . . together with Angela's individualized education program if one is prepared." (*Ibid.*)

Esteban's case is different. Esteban's educational needs and progress were addressed in the probation department report, and Esteban's counsel raised them at the disposition hearing in advocating for Esteban to be given standard probation at his home, where he could continue attending his high school. Far from failing to mention Esteban's

educational needs, the juvenile court's statements on the record reflected its familiarity with the contents of the probation department report on Esteban's progress at school as well as the contents of the letters from Esteban's teachers that were submitted by Esteban's counsel. The juvenile court ordered Esteban to attend school regularly and obey school rules, to remain on campus during school hours unless he had the permission of school officials or his probation officer, and ordered Esteban and his parents to cooperate with the probation officer "in any program of guidance, counseling, and therapy." The juvenile court ordered Esteban to provide his final grades to his probation officer for inclusion in a progress report.

In addition, it is significant here that the juvenile court determined that it would not designate an educational rights holder other than Esteban's parents, or place him out of his home: Esteban was being returned to his home and his school, not being placed in foster care or any other situation that would interrupt the continuity of his education. Although by its terms, rule 5.651 applies to every minor who is the subject of a petition under section 602, as Esteban is here (rule 5.651(a)(1)), rule 5.651 has particular application to minors who are in foster care, who are at risk of entering foster care, or who are the subject of dependency proceedings, as reflected in the text of the Advisory Committee Comment.[7]

In sum, we conclude that Esteban has forfeited his claim of error with respect to the juvenile court's compliance with rule 5.651(b)(2). Moreover, we agree with the Attorney General that there is no need to remand for additional express findings and orders under rule 5.651(b)(2).

---

[7] The Advisory Committee Comment to rule 5.651 notes that the rule applies to "[a] child or youth in, or at risk of entering, foster care," and states that "to protect [a child's statutory right to a meaningful opportunity to meet the state's academic achievement standards], the juvenile court, advocates, placing agencies, care providers, educators, and service providers must work together to maintain stable school placements and ensure that the child or youth is placed in the least restrictive educational programs and has access to the academic resources, services, and extracurricular and enrichment activities that are available to other pupils."

B.      *Conditions of Probation*

In objecting to the conditions of his probation, Esteban asks the court to resolve "material inconsistencies between the three versions of the probation conditions in the record." One version is the juvenile court's pronouncement at the dispositional hearing; the second is the minute order signed by the juvenile court judge; the third is a document prepared by the Alameda County Juvenile Probation Department, entitled "Conditions of Probation and Court Orders." The Attorney General contends that the court's oral pronouncements control over the clerk's transcript, citing *People v. Mitchell* (2001) 26 Cal.4th 181, 185, and Esteban does not object to that approach, so we consider Esteban's objections to his probation conditions only as they apply to the juvenile court's oral pronouncements.

The Attorney General argues that Esteban has forfeited claims of error as to these probation conditions because he did not raise appropriate objections in the juvenile court, but we will address the merits because Esteban's arguments "present pure questions of law" and are "easily remediable on appeal." (*In re Victor L.*, (2010) 182 Cal.App.4th 902, 907 (*Victor L.*).)

In reviewing Esteban's objections, we bear in mind that the juvenile court is authorized to "impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (§ 730, subd. (b).) We generally review the conditions imposed by the juvenile court for abuse of discretion. (*In re P.A.* (2012) 211 Cal.App.4th 23, 33.)

1.      *Requirements of Good Conduct and School Attendance*

Esteban challenges the probation conditions requiring him to "be of good conduct" and "[a]ttend school on a regular basis" on the grounds that they are facially and unconstitutionally vague.[8] He argues that we should strike or modify the conditions

---

[8] Because the juvenile court's oral pronouncements control, we do not address Esteban's objections to conditions that do not appear in the oral pronouncements.

12

because they do not provide sufficient notice for him to know in advance what constitutes bad conduct or irregular attendance. The Attorney General argues that the challenged conditions are not vague when they are read in context with a common-sense interpretation.

To withstand a challenge of vagueness, "A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated.' " (*Sheena K., supra,* 40 Cal.4th at p. 890, quoting *People v. Reinertson* (1986) 178 Cal.App.3d 320, 324-325.) The legal principles governing our review of probation conditions that are claimed to be unconstitutionally vague are set forth in *Victor L.*:

"The permissible scope of discretion in formulating terms of juvenile probation is even greater than that allowed for adults. '[E]ven where there is an invasion of protected freedoms "the power of the state to control the conduct of children reaches beyond the scope of its authority over adults . . . ." ' (*Ginsberg v. New York* (1968) 390 U.S. 629, 638.) This is because juveniles are deemed to be 'more in need of guidance and supervision than adults, and because a minor's constitutional rights are more circumscribed.' ([*In re*] *Antonio R.*[ (2000)] 78 Cal.App.4th [937,] 941.) Thus, ' "a condition of probation that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court." ' ([*Sheena K.*]*, supra,* 40 Cal.4th 875, 889 . . . ; see also *In re R.V.* (2009) 171 Cal.App.4th 239, 247; *In re Frank V.* (1991) 233 Cal.App.3d. 1232, 1242-1243 [rule derives from court's rule as *parens patriae*].)

"Of course, the juvenile court's discretion is not boundless. Under the void for vagueness doctrine, based on the due process concept of fair warning, an order ' "must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated." ' (*Sheena K., supra*, 40 Cal.4th at p. 890.) The doctrine invalidates a condition of probation ' " 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " ' (*Ibid.*) By failing to clearly define the prohibited conduct, a vague

13

condition of probation allows law enforcement and the courts to apply the restriction on an ' " '*ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' " ' (*Ibid.*)" (*Victor L.*, *supra*, 182 Cal.App.4th at p. 910.)

"A probation condition should be given 'the meaning that would appear to a reasonable, objective reader.' " (*People v. Olguin* (2008) 45 Cal.4th 375, 382, quoting *People v. Bravo* (1987) 43 Cal.3d 600, 606.) If a vague probation condition can be modified "without reference to the particular sentencing record developed in the trial court" (*Sheena K.*, *supra*, 40 Cal.4th at p. 887), an issue of law arises that is subject to de novo review on appeal. (*People v. Mendez* (2013) 221 Cal.App.4th 1167, 1172 (*Mendez*).)

We agree with the Attorney General that the requirement that Esteban "be of good conduct" is not vague in this case. The juvenile court required Esteban to "Obey all laws of the community and be of good conduct; [¶] Obey your parents, legal guardian, or caregiver." The requirements that Esteban obey the law and his parents, as well as the requirement that he obey all school rules and regulations, give substance to the condition "good conduct." The "good conduct" condition does not add to those requirements, and therefore appears to be nothing more than surplusage. Esteban cites no authority to support an argument that we should strike surplusage in probation conditions, and we decline to do so here.

Further, the requirement that Esteban "[a]ttend school on a regular basis" is not vague, especially when it is read in the context of the entire condition: "Attend school on a regular basis. Obey all school rules and regulations. Do not leave the school campus during school hours without permission of school officials or the Probation Officer." The meaning of the condition is clear: Esteban is to attend school when it is in session, unless he is excused pursuant to the school's rules and regulations.

Accordingly, we affirm the inclusion of the conditions "be of good conduct" and "[a]ttend school on a regular basis" in the juvenile court's disposition order.

14

2.        *Electronics Search Condition*

During the disposition hearing, Esteban's counsel objected to any search condition that included "electronic devices and/or social media," stating, "I did note in the report that Esteban mentions experimenting with marijuana.  He doesn't seem to have a big issue with that.  So I'm asking the Court not to order drug terms."  The juvenile court, however, imposed a search condition requiring Esteban to "submit to a test of [his] blood, breath, or urine to detect the presence of [drugs] in your system and a search of your person, any containers you may have or own, your vehicle, or residence day or night at the request of a Probation Officer or peace officer, and that includes electronics and passwords."  The juvenile court explained, "I find that for minors who have been using marijuana or drugs, it is important to be able to supervise the concerns the Court has using electronics, because minors will purchase or sell drugs on the Internet, display themselves using drugs, and in possession of paraphernalia.  It's the only logical way of being able—to be able to supervise this important term of probation."

Here, Esteban challenges only the portion of the search condition that covers his electronic devices and the disclosure of passwords, arguing that the condition is unconstitutionally overbroad and violates his privacy and the privacy of third parties.[9]  Citing *In re Malik J.* (2015) 240 Cal.App.4th 896 (*Malik J.*), he argues that we should strike or modify the condition because it is not narrowly tailored to serve the interests of public safety and rehabilitation, and not narrowly tailored to him as an individual.[10]

---

[9] The Attorney General argues Esteban's counsel "merely made a general objection without specifying the basis for [the] challenge to the electronic search condition," and on that basis argues that Esteban has not preserved his objection to this probation condition.  We disagree with the Attorney General's characterization of the objection, and accordingly, we reject the argument that the objection has been forfeited.

[10] In *Malik J.*, the defendant argued that a search condition that encompassed his electronics and passwords was unreasonable under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) and constitutionally overbroad.  (*Malik J.*, *supra*, 240 Cal.App.4th at pp. 901-902.)  In *Malik J.*, the defendant had stolen a cell phone (*id.* at p. 900), and the People argued that the search condition was justified so that if Malik " 'were found in possession of a cell phone, a probation or police officer could check the phone to determine whether it

15

The Attorney General does not dispute that the condition is overbroad. She argues that we should affirm the condition after it is tailored to facilitate Esteban's rehabilitation. Specifically, she argues that we should modify it so that searches of Esteban's electronics are limited to texts, voicemails, photographs, emails, and social media accounts, which might reveal whether Esteban is using drugs.[11]

In reply, Esteban expresses doubt that such a limitation would be " 'any limitation at all' " as protection of his privacy rights, quoting *In re J.B.* (2015) 242 Cal.App.4th 749, 758-759 (*J.B.*), in which a similar search condition was held to be unreasonable under *Lent, supra,* 15 Cal.3d 48, and therefore invalid. Although Esteban does not oppose in principle a modification of the phrase "electronics and passwords" that would tailor the condition to monitor his compliance with the no-drugs condition, he does not propose any language we might use to accomplish such tailoring. Esteban contends that periodic drug testing has been effective in monitoring Esteban's compliance with the condition, and that such testing, which does not affect the privacy of third parties, is preferable to the electronics search condition imposed by the juvenile court and to the condition proposed by the Attorney General.

a. *Applicable Law*

As we discussed above, a juvenile court may impose "a ' "condition of probation that would be unconstitutional or otherwise improper for an adult probationer." ' " (*Sheena K.*, *supra*, 40 Cal.4th at p. 889.) Such conditions "are permissible only if

---

had been stolen.' " (*Id.* at p. 902.) The Court of Appeal held that the electronics search condition imposed by the juvenile court was overbroad because it "[went] considerably farther than permitting police to search a cell phone to determine whether Malik is the owner. It also require[d] him to turn over his passwords to, and authorize[d] unfettered searches of, all of his electronic devices and all of his social media accounts." (*Ibid.*) The Court of Appeal in *Malik* modified the electronics search condition; among other things, it struck the requirement that he "provide any passwords to any social media sites." (*Id.* at pp. 900, 906.)

[11] Our Supreme Court has recently granted review in the case on which the Attorney General primarily relies for her argument that we should modify the electronics search condition in this way. (*In re Ricardo P.* (2015) 241 Cal.App.4th 676, review granted Feb. 17. 2016, S230923.)

16

' " 'tailored specifically to meet the needs of the juvenile.' " ' " (*In re D.G.* (2010) 187 Cal.App.4th 47, 53 (*D.G.*).) As we have stated elsewhere, the requirement of tailoring has particular application to search conditions imposed on juveniles. (*In re Mark C.* (2016) 244 Cal.App.4th 520, 530 (*Mark C.*).) "For adults, probation is a privilege and adults may waive their Fourth Amendment rights by consenting to warrantless searches ' "in exchange for the opportunity to avoid service of a state prison term." [Citation.]' (*People v. Balestra* (1999) 76 Cal.App.4th 57, 65 . . ., quoting *In re York* (1995) 9 Cal.4th 1133, 1150.) For juveniles, however, probation ' " 'is an ingredient of a final order for the minor's reformation and rehabilitation.' " (*In re Tyrell J.* (1994) 8 Cal.4th 68, 81, overruled on another ground in *In re Jaime P.* (2006) 40 Cal.4th 128.) A juvenile "cannot refuse probation [citations] and therefore is in no position to refuse a particular condition of probation." (*In re Binh L.* (1992) 5 Cal.App.4th 194, 202 (*Binh*).) Courts have recognized that "a minor cannot be made subject to an automatic search condition; instead, such condition must be tailored to fit the circumstances of the case and the minor." (See *People v. Rios* (2011) 193 Cal.App.4th 584, 597; see also *Binh*, *supra*, 5 Cal.App.4th at p. 203 . . . .)' (*In re Erica R.* (2015) 240 Cal.App.4th 907, 914 (*Erica R.*).)" (*Mark C.*, *supra*, 244 Cal.App.4th at p. 530.)

One limit on the juvenile court's discretion in imposing conditions of probation, including search conditions, is set forth in *Lent*. (*D.G.*, *supra*, 187 Cal.App.4th at p. 52 [citing cases "holding the *Lent* factors are applicable in evaluating juvenile probation conditions"].) Under *Lent*, upon review, "[a] condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality[.]' " (*Lent*, *supra*, 15 Cal.3d at p. 486.)

b.    *Analysis*

The Attorney General contends that Esteban raises "purely a constitutional argument" as to the electronics search condition, and has not preserved arguments of invalidity under *Lent* or *Erica R.*, neither of which Esteban discusses in his opening brief.

17

The Attorney General concedes that we may decide to consider those issues, and argues that the condition is valid under *Lent* and distinguishable from *Erica R.*, in which we held that it was unreasonable under *Lent* to require defendant to submit to searches of her electronics, including passwords "because there was no evidence connecting the juvenile's electronic device or social media usage to her offense or to a risk of future criminal conduct." (*Erica R.*, *supra*, 240 Cal.App.4th at p. 909.) Yet Esteban does not address this argument or these cases in his reply brief, perhaps because Esteban told the juvenile court that he used a camera holder to record himself when he skated and because the police were able to identify Esteban by using a photograph posted on the social media site Instagram that showed him holding two skateboards, one of which belonged to the victim.[12] We agree that Esteban has forfeited any *Lent* argument on appeal, and we therefore move to the question of overbreadth.

We review constitutional challenges to probation conditions de novo. (*Malik J.*, *supra*, 240 Cal.App.4th at p. 901.) " 'The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement.' " (*Id.* at p. 904, quoting *In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.) The "ubiquitous advent of cell phones" as well as other electronic devices, portable and not, "and their capacity both to store and to remotely access vast quantities of personal information" of all kinds means that the juvenile court must "consider the extent to which an officer may search such devices pursuant to a probation search condition without violating the probationer's diminished privacy interests." (*Malik J.*, *supra*, 240 Cal.App.4th at pp. 902-903.) Like Esteban, we question whether the Attorney General's proposed limitation of the search condition to texts, voicemails, photographs, emails, and

_____

[12] In this respect, Esteban's case differs from *J.B.*, which he cites in his reply brief. As in *Erica R.*, "there [wa]s no showing of any connection between the minor's use of electronic devices and his past or potential future criminal activity." (*J.B.*, *supra*, 242 Cal.App.4th at p. 756.)

18

social media accounts provides an appropriate fit between the juvenile court's purposes in imposing the probation and Esteban's diminished privacy interests as a probationer. Accordingly, we will strike the phrase "and that includes electronics and passwords" from the search condition, and remand to the juvenile court, which may exercise its discretion to impose an electronics search condition that is tailored to Esteban's reformation and rehabilitation.

### 3.    *Drug Condition*

The juvenile court imposed a condition of probation that states, "With regards to drugs, you're not to associate with anyone you know or reasonably should know is using, dealing, or possessing any illegal or intoxicating substances. You yourself must not be under the influence or in possession of any such substances or possess any associated paraphernalia." On appeal, Esteban raises several objections to this condition, each of which amounts to a claim of vagueness or overbreadth. We consider Esteban's various objections to the drug condition in turn.

### a.    *Constructive Knowledge in Association Condition*

We begin with the association condition, which includes the phrase "you know or reasonably should know," and therefore incorporates both actual and constructive knowledge elements. Esteban does not object to the actual knowledge requirement, which, as he acknowledges, serves a valid rehabilitative purpose by prohibiting him from associating with people he knows are drug dealers or users. He argues that the constructive knowledge element "unfairly threatens the loss of [Esteban's] conditional liberty interest, impermissibly infringes upon his constitutional right of association, and would allow for 'ad hoc and subjective' evaluation by those enforcing the condition,"[13] but he cites no authority to support his contention that the constructive knowledge element here is unconstitutionally vague or overbroad. To the contrary, Esteban acknowledges that constructive knowledge has been likened to a reasonable person standard, which is an objective standard; that it may promote rehabilitation to hold

---

[13] Esteban's argument quotes from *Sheena K*, *supra*, 40 Cal.4th at page 890.

probationers to a reasonable person standard; and that courts have upheld as constitutional constructive knowledge elements in probation conditions restricting an adult probationer's right of association. (*Mendez*, *supra*, 221 Cal.App.4th at pp. 1176-1178.)

Like the court in *Mendez*, which rejected a vagueness challenge to a constructive knowledge element as part of an association condition, "[w]e foresee no difficulty either with a probationer understanding what is required by [a constructive knowledge] condition or with a court determining whether such a condition has been violated. It may in fact be easier to establish what a probationer reasonably should know than to delve into the epistemological depths of what the probationer actually knows." (*Mendez*, *supra*, 221 Cal.App.4th at p. 1178.) We see no basis for striking or modifying the constructive knowledge element of the association condition in this case.

### b. *Illegal or Intoxicating Substances*

The drug condition prohibits Esteban from associating with those who use, deal or possess "any illegal or intoxicating substances" and prohibits him from being "under the influence of or in possession of any such substances." Esteban objects that the phrase "illegal or intoxicating substances" is vague because it is "susceptible of different interpretations." The interpretations that Esteban discusses indicate overbreadth as well as vagueness: for example, Esteban expresses concern that the prohibition extends to his possession of "household items that have legitimate innocent purposes," and that he might violate his probation if he were to "use superglue to repair a broken ceramic, inhale the fumes, and feel affected by the chemical ingredients."

Esteban proposes that in the association condition, the phrase "any illegal or intoxicating substances" should be changed to "illegal drugs," and in the influence and possession condition the phrase should be changed to "any alcohol, any controlled substances, or any drugs, excluding legal, non-prescription, over-the-counter drugs or prescribed pharmaceutical drugs for which you have a valid physician's prescription." The Attorney General does not address Esteban's arguments with respect to the phrase

20

"any illegal or intoxicating substances" except to state that the juvenile court's oral pronouncement of the drug condition should be affirmed.

We look first at the association condition. We do not agree that the juvenile court's phrase "illegal or intoxicating substances" is vague or overbroad in the context in which it appears: "you're not to associate with anyone you know or reasonably should know is using, dealing, or possessing any illegal or intoxicating substances." Moreover, Esteban's proposed modification, in which the condition would refer only to "illegal drugs," is underinclusive. Unlike Esteban's proposed association condition, the condition imposed by the juvenile court prohibits Esteban from associating with those who are using alcohol or inhalants. We decline to modify that part of the drug condition.

We then turn to the use and possession condition. Esteban notes that "intoxicating substances" could include "drugs legally available only by a physician's prescription, over-the-counter medicines and household items that have legitimate innocent purposes." In the interest of clarity and precision we will modify the language of the condition. (See *Sheena K.*, *supra*, 40 Cal.4th at p. 887 [recognizing that an appellate court can modify a probation condition to cure vagueness or overbreadth].) But once again we find that the language Esteban proposes for the modification is underinclusive. For example, Esteban appears to recognize that the influence and possession condition is intended to prohibit him from sniffing glue and using other inhalants, but his proposed language, which prohibits "any alcohol, any controlled substances, or any drugs, excluding legal, non-prescription, over-the-counter drugs or prescribed pharmaceutical drugs for which you have a valid physician's prescription," does not capture that prohibition. We therefore modify the condition to prohibit Esteban from being under the influence of or in possession of "any illegal substance, or any alcohol, or any other intoxicant for the purpose of intoxication."

21

c.        *Drug Paraphernalia*

The drug condition prohibits Esteban from possessing paraphernalia "associated" with the prohibited substances.[14]  Esteban argues that the phrase is unconstitutionally vague, noting that the only substance use reflected in the record is "recent experimentation with marijuana," and arguing that he could "possess a common item with a non-illicit use without knowing of or intending to use it as paraphernalia for cocaine, methamphetamine, or heroin."  He proposes we modify the condition to prohibit possession of "drug paraphernalia for the purpose of using it in such a manner."

As was the case for the phrase "any illegal or intoxicating substances," the Attorney General does not address Esteban's arguments with respect to this phrase or express any opposition to his proposed language.  We address Esteban's concern that he might possess a common item without knowing of its use as paraphernalia or intending to use it as paraphernalia by modifying the condition to prohibit the possession of any item that he knows to be "associated paraphernalia" or any item that he intends to use as such. (See *Sheena K.*, *supra*, 40 Cal.4th at p. 887 [recognizing that an appellate court can modify a probation condition to cure vagueness or overbreadth].)

d.        *Knowledge Requirement for Possession*

Esteban argues that to ensure due process, we must modify the conditions prohibiting him from using or possessing particular items to include language specifying that he *knowingly* use or possess them.  He relies on cases including *People v. Freitas* (2009) 179 Cal.App.4th 747, 750 (*Freitas*), in which the defendant challenged as vague and overbroad probation conditions that prohibited him from possessing "stolen property" and " 'firearms or ammunition.' "  In *Freitas*, the appellate court modified the conditions to prohibit him from *knowingly* possessing such items.  (*Id.* at p. 753.)

_____

[14] In his opening brief, Esteban objects specifically to the phrase "related paraphernalia," which appears in the minute order and the document prepared by the probation department.  Here we consider the similar phrase "associated paraphernalia," which appears in the juvenile court's oral pronouncement.

The Attorney General does not dispute that there is a mens rea requirement associated with prohibitions against use and possession in the drug condition, but says there is no need for us to modify the condition. She relies on *People v. Patel* (2011) 196 Cal.App.4th 956, 960 (*Patel*) in which the Third District stated that, in view of the "substantial uncontradicted body of case law establishing, as a matter of law, that a probationer cannot be punished for presence, possession, association, or other actions absent proof of scienter" it construes "every probation condition proscribing a probationer's presence, possession, association, or similar action to require the action be undertaken knowingly."

As the parties acknowledge, our Supreme Court is currently considering whether an explicit knowledge requirement is constitutionally required in certain probation conditions, including conditions that prohibit the possession of illegal drugs and paraphernalia. (*People v. Hall* (2015) 236 Cal.App.4th 1124, review granted Sept. 9, 2015, S227193.) In the meantime, the Attorney General urges us to consider the "commonsense approach" taken in *Patel*, which states, "It will no longer be necessary to seek a modification of a probation order that fails to expressly include" a knowledge requirement. (*Patel*, *supra*, 196 Cal.App.4th at pp. 960-961.) Esteban urges us to follow the reasoning adopted by *Freitas* and *In re Kevin F.* (2015) 239 Cal.App.4th 351, in which the appellate court modified a probation condition that prohibited the possession of weapons to add requirements that the minor knowingly possess the items at issue.[15] (*Id.* at p. 366.)

---

[15] Esteban also refers us to *Victor L.*, but the conditions at issue there did not concern possession, but rather concerned association and the right to travel. (*Victor L.*, *supra*, 182 Cal.App.4th at pp. 911-913.) For example, one condition imposed by the juvenile court prohibited the minor from remaining " 'in any building, vehicle or in the presence of any person where dangerous or deadly weapons or firearms or ammunition exist.' " (*Id.* at p. 912.) The appellate court modified the condition to prohibit him from remaining " 'in any building, vehicle or in the presence of any person where the Minor knows one or more dangerous or deadly weapons or firearms or ammunition exist.' " (*Id.* at p. 931.)

Esteban does not cite any cases in which a probation condition is modified to include an explicit requirement that possession or consumption of drugs or alcohol be "knowing," except for *Patel*. There, the trial court had imposed a condition of probation that prohibited defendant from "drinking alcohol, possessing it, or being in any place where it is the chief item of sale." (*Patel*, *supra*, 196 Cal.App.4th at p. 959.) The trial court also imposed a condition prohibiting his possession of firearms or ammunition. (*Id.* at p. 959.) The "firearms or ammunition" condition included an explicit qualification that the conduct be committed knowingly, but the alcohol condition did not, so the appellate court, in the Third District, added the qualification to the alcohol condition. (*Ibid.*) Recognizing the body of law holding that "a probationer cannot be punished for presence, possession, association or other actions absent proof of scienter," the appellate court also gave "notice of [its] intent to henceforth no longer entertain this issue on appeal," and stated that "[i]t will no longer be necessary to seek a modification of a probation order that fails to expressly include" such a requirement. (*Id.* at pp. 960-961.)

As we have modified the drug condition, it now states: "With regard to drugs, you're not to associate with anyone you know or reasonably should know is using, dealing, or possessing any illegal or intoxicating substances. You must not be under the influence or in possession of any illegal substance, or any alcohol, or any other intoxicant for the purpose of intoxication. You must not possess any item that you know to be paraphernalia associated with those prohibited substances, or that you intend to use as such."

For a probationer to violate a term of probation, the probationer's conduct must " 'constitute[] a willful violation of the terms and conditions of probation.' " (*People v. Cervantes* (2009) 175 Cal.App.4th 291, 295, quoting *People v. Galvan* (2007) 155 Cal.App.4th 978, 982). In view of that established law, and in view of the modifications we have made in the drug condition to address Esteban's concerns about the possible vagueness of the terms "illegal or intoxicating substances" and "associated paraphernalia," we are not concerned that Esteban would "violate probation by being unaware of the presence of an illegal item in his possession, or by consuming or

24

possessing a substance that contains some unknown or undetectable amount of a drug or alcohol."

We do not foreclose the possibility that a juvenile court might impose probation conditions that are appropriately limited or qualified by the inclusion of an explicit requirement that conduct be willful or knowing, but we do not see any need to modify the drug condition imposed by the juvenile court here to include a requirement that the possession of drugs or paraphernalia or the use of drugs be "knowing."

## DISPOSITION

We modify the juvenile court's drug condition as follows:  "With regard to drugs, you're not to associate with anyone you know or reasonably should know is using, dealing, or possessing any illegal or intoxicating substances.  You must not be under the influence or in possession of any illegal substance, or any alcohol, or any other intoxicant for the purpose of intoxication.  You must not possess any item that you know to be paraphernalia associated with those prohibited substances, or that you intend to use as such."  We modify the juvenile court's search condition by striking the phrase "including electronics and passwords," and we remand so that the juvenile court may, if it so chooses, exercise its discretion to impose an electronics search condition that is tailored to Esteban's reformation and rehabilitation.  In all other respects, the juvenile court's dispositional order is affirmed.

_____
Miller, J.

We concur:


_____
Kline, P.J.


_____
Richman, J.


A145285, *People v. Esteban M.*

26